Walter M. GOLDSMITH,
Plaintiff-Appellant,

v.

Walter R. STURR, Collector of Internal
Revenue, Defendant-Appellee.

No. 80, Docket 24198.

United States Court of Appeals
Second Circuit.

Argued Jan. 23, 1957.

Decided Feb. 27, 1957.

Osmond K. Fraenkel, New York City
(Osmond K. Fraenkel and Samuel P. Cohen, New York City, of counsel), for
plaintiff-appellant.

Paul W. Williams, U. S. Atty., for
Southern Dist. of New York, New York
City (Arthur B. Kramer, Asst. U. S.
Atty., New York City, of counsel), for
defendant-appellee.

Before CLARK, Chief Judge,
WATERMAN, Circuit Judge and
LEIBELL, District Judge.

LEIBELL, District Judge.

This is an appeal from a judgment dated June 6, 1956, dismissing the complaint herein, after a trial before Judge Edelstein, without a jury. The trial judge made findings of fact and conclusions of law, incorporated in a memorandum opinion that discussed the evidence and the law.

The plaintiff taxpayer instituted this action to recover a sum assessed as income taxes for 1945, which he paid under protest. The triable issues were specified by the parties in paragraphs 11 and 12 of a stipulation of facts dated October 11, 1955:

"11. Disputed items of income, the inclusion of which in taxpayer's 1945 income and the amounts of which are for the Court to determine, are the following and only the following:

"(a) Distributable ordinary income of the Goldsmith Trust for 1945: Maximum amount which can be attributed to taxpayer is $8,335.-79, representing ¼th of distributable ordinary income from the Goldsmith Trust in 1945.

"(b) Net capital gains of the Goldsmith Trust in 1945: Maximum amount attributable to taxpayer is a figure representing ¼th of the distributable capital gains of the Goldsmith Trust in 1945.

"(c) Interest payment of $1,109.-13.

"12. The disputed deduction item is the following and only the following:

"Claimed interest payment from taxpayer to his wife, Rosetta C. Goldsmith, the maximum amount of which is $2,892.04."

On May 17, 1926 the taxpayer, his father and three sisters, Gertrude Rosenblatt, Lillian H. Goodman, and Ruth V. Bair, organized a real estate and stock holding company, known as the Goroba Corporation. Its name was changed to the F. & H. G. Corporation on August 3, 1926. The corporation obtained its capital by the issuance of 480 shares of stock ($100 par value) and $600,000.00 in debenture bonds. The taxpayer, Walter M. Goldsmith, and his three sisters (Gertrude, Lillian and Ruth) each owned 119 shares of capital stock and $150,000.00 worth of debenture bonds. The taxpayer's father possessed the remaining four shares of capital stock, but owned no debenture bonds. Upon the death of the father in the early 1930's, his four shares passed by inheritance to the taxpayer and his three sisters, each receiving one additional share of capital stock.

On December 14, 1938, a special meeting of the stockholders of F. & H. G. Corporation was held. It was there agreed unanimously to dissolve the corporation and to adopt a Plan of Liquidation, whereunder all outstanding certificates of stock and debenture bonds would be surrendered to the corporation for cancellation and redemption, and all of the assets of the corporation would "be transferred, set over and conveyed" to the taxpayer, Walter M. Goldsmith, as trustee under a trust indenture, dated December 14, 1938, annexed to the Plan of Liquidation. Thereafter a certificate of dissolution of the corporation was filed in Albany, and its assets were turned over to the taxpayer, as trustee, under the trust indenture.

The taxpayer was originally the secretary of the corporation, but became president thereof upon the death of his father. His duties were to conduct the day to day administrative tasks of the corporation; to supervise the collection of income, the payment of expenses and distribution of income, and to supervise its operations. As trustee under the trust indenture, he performed similar functions for the trust.

The taxpayer testified that in or about the year 1930, the $150,000 worth of debenture bonds originally owned by him were turned over or "given" to his wife, Rosetta C. Goldsmith. He introduced no documentary evidence to support the making of the gift in 1930. He further testified that after the debenture bonds were endorsed by him and delivered to

his wife, "all payments on that bond in the way of interest were paid to her by the corporation"; and that after the "Goldsmith Trust" came into existence, "all payments of income were made to her."

The taxpayer also testified that there existed an oral agreement between himself and his wife, to the effect that any monies advanced by the wife to him, would be repaid with interest at the rate of 6% per annum; that the agreement first became operative in 1923, and was evidenced by a ledger account (Ex. 4) kept by the taxpayer from the year 1923 to 1942. No record was kept or entry made after December 30, 1942.

The first question presented on this appeal is whether the taxpayer in or about 1930, made a genuine gift to his wife of $150,000 of the corporation bonds.

Under paragraph I of the trust agreement the trustee was to pay all the obligations of the corporation, "except the indebtedness of said corporation to bondholders, which shall be paid by the Trustee in the manner hereinafter provided."

Paragraph II(a) and (b) of the Trust directed that certain specified monthly payments were to be made to the six settlors and other persons, out of net income. Under paragraph II(b) "Rosetta C. Goldsmith, or Walter M. Goldsmith [taxpayer herein], or the survivor," was to receive the sum of $656.25 per month. If these payments did not exhaust the available distributable net income, then paragraph II(c) would come into play. Paragraph II(c) permitted the remaining net income to be applied "toward the payment of the indebtedness, with interest, as hereinafter provided, of the F. & H. G. Corp'n to its bondholders, until such indebtedness shall have been paid in full." Paragraph II(c) further stated:

"The parties do hereby agree that the indebtedness of F. & H. G. Corp'n to its bondholders as of the 31st day of December, 1938 was as follows:

Rosetta C. Goldsmith
 and/or Walter M.
 Goldsmith ........$149,936.25
Kate A. Goldsmith .... 10,000.00
Lillian H. Goodman ... 124,719.95
Ruth V. Bair ........ 60,793.33
Gertrude Rosenblatt .. 34,202.06"

"After such indebtedness shall have been paid in full, to pay over any such surplus income equally to and among" the taxpayer and his three sisters, who were the sole stockholders at the time the corporation was dissolved and the trust herein created.

The above indented quote did not appear in the trust indenture as originally executed December 14, 1938. According to the testimony of the taxpayer it came about by way of an amendment dated July 31, 1939. Paragraph II(c) as originally executed made no mention of the names of the bondholders or the amounts due to each bondholder. The taxpayer testified that the trust agreement was prepared at the end of the year 1938, and that "until we had an accountant's report we didn't know just how much had been advanced to these individual stockholders and bondholders." According to the taxpayer the information was necessary "in order to find out how much was due of the principal of the trust to the individuals we had to offset the amounts due by the individuals to the corporation against the amount of bonds which they held." He claimed that the purpose of the amendment was to set out in record form the accountant's findings as to the status of each former bondholder of the F. & H. G. Corporation. His involved explanation of the plain statement of the trust in paragraph II(c), to show that it did not mean what it stated, is not convincing and was not accepted by the trial judge.

Under paragraph II(d), the taxpayer, as trustee, possessed a discretionary power to invade and use the corpus of the trust for the purposes hereinabove set forth.

800

Paragraph III set out the method of "computing the interest on the indebtedness of F. & H. G. Corp'n to its bondholders." It provided that "such indebtedness is to be determined as of the 1st day of December 1938 and thereafter each bondholder shall be credited semi-annually with interest at the rate of 6% per annum upon the excess of the amount still due him over the average amount due each bondholder and shall be charged semi-annually with interest at the same rate upon the sum by which the amount still due him is exceeded by the average amount due each bondholder."

The taxpayer testified that no one received actual payments or made actual deposits under paragraph III, but rather their individual accounts were adjusted accordingly by a bookkeeping entry.

Paragraph III further provided:
"For the purposes of this paragraph 'Bondholders' shall be deemed to be

Rosetta C. Goldsmith

Lillian H. Goodman

Ruth V. Bair

Gertrude Rosenblatt

and the amount of the indebtedness of F. & H. G. Corp'n to the bondholder, Kate A. Goldsmith, shall be added to the amount of the indebtedness of F. & H. G. Corp'n to Rosetta C. Goldsmith and both accounts shall be treated as a single account."

The above quote did not appear in the original trust indenture of December 14, 1938, but was provided by an amendment. Whether it was part of the amendment of July 31, 1939, or part of the amendment of February 23, 1940, is not clear from the record before us. However, a reading of the tax case of Gertrude Rosenblatt, reported in 8 T.C. 1245, would indicate the latter date. The Tax Court, having before it the trust agreement presently before this court, stated at page 1247: "Rosetta [Mrs. Goldsmith] was named jointly with Walter [taxpayer herein] as an income beneficiary of the trust, * * *. Rosetta and Walter were also jointly named as bondholders of F. & H. G. Corp'n. An amendment eliminated the names of Walter and Kate [taxpayer's daughter] as bondholders of F. & H. G. Corp'n."

Paragraph III was twice amended after its execution on December 14, 1938. The first amendment on July 31, 1939, listed the taxpayer jointly with his wife, as a bondholder, as was done in paragraph II(c), and also listed taxpayer's daughter as a bondholder. The amendment of February 23, 1940 eliminated the name of taxpayer as bondholder jointly with his wife, and, while also eliminating the name of the taxpayer's daughter as a bondholder, it provided that the alleged indebtedness owing to the daughter should be added to the alleged indebtedness owing to the wife, and that both accounts should be treated as a single account. After the last amendment there was an apparent conflict between paragraphs II(c) and III.

Under the terms of the indenture the trust was to continue for the life of the taxpayer, but the trust could be terminated and revoked at any time upon the written consent of any three or four named persons—the taxpayer and his three sisters.

In the stipulation of facts it is admitted that the trust agreement is a "revocable trust" within the meaning of Section 166 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 166. It was revocable by the joint action of the taxpayer and any two of his three sisters, none of whom possessed a "substantial adverse interest in the disposition," of that part of the corpus or the income therefrom, which was under the control and dominion or ownership of the taxpayer. Richardson v. Commissioner, 2 Cir., 121 F.2d 1.

It appears from one of the exhibits offered at the trial,[1] that for the years 1939, 1940, 1941 and 1942, the taxpayer, as trustee made payments under paragraph II(c) to his wife, as a bondholder-beneficiary. The amounts were listed as follows: 1939—$3,678.43; 1940—$15,000.00; 1941—$27,012.25; 1942—$15,012.25; totaling, $60,702.93. At the trial the taxpayer testified on cross-examination that of the amount so paid from the trust, $59,500.00 thereof was paid by check to him and not to his wife, and that he signed those checks and made use of those funds.[2] The taxpayer contends that he accepted such monies as advances made by his wife under their oral agreement of 1923, yet he did not record these so-called "advances" for the years 1939 through 1942, in his ledger account (Ex. 4) until the year 1942.[3]

The court below found that the taxpayer was the true grantor to the trust of the debenture bonds in question, and as such was chargeable with one-fourth of the distributable net income and one-fourth of the net capital gains of the Goldsmith Trust for the year 1945, under both Sec. 22(a), 26 U.S.C.A. § 22(a), and Sec. 166 of the Internal Revenue Code of 1939.[4]

 There was sufficient evidence in the record on which to base those findings. The trial judge was not bound by the provisions of the trust indenture setting forth who the grantors or settlors were. He could inquire into and examine carefully the facts surrounding the alleged 1930 gift of the bonds to the wife, in determining whether the taxpayer intended to give away absolutely and irrevocably the ownership, dominion, and control over the bonds. The trial judge could take into consideration the donor's acts or conduct with reference to these bonds and the income paid thereunder, subsequent to the date of the alleged gift. The substance and not the form of a transaction may be considered the controlling factor in tax matters. The documentary proof sub-

---

1. Exhibit 3A was part of the taxpayer settlement account, as trustee of the Goldsmith Trust, prepared on September 14, 1951, for submission to the New York Supreme Court, Westchester County. The present suit was instituted March 5, 1951.

2. The taxpayer on cross-examination testified:— "The $59,500 was paid under paragraph 2–C, but instead of being paid by check of the trust to the order of Mrs. Goldman [Goldsmith] those checks were payable—made payable to me and added to the indebtedness which I owed her."

3. The credit side of the ledger sheet (Ex. 4) contained the following entries:—

 *1942*

| | | |
|---|---|---|
| Feb. 3 | [To R. C. G. cash] | $ 222.04 |
| 12/30/38 | P'd to W. M. G. by G. Trust | 12,000.00 |
| 7/31/39 | " " " " " " | 3,500.00 |
| 5/15/40 | " " " " " " | 15,000.00 |
| 1/ 2/41 | " " " " " " | 10,000.00 |
| 4/16/41 | " " " " " " | 14,000.00 |
| 1/ 2/42 | " " " " " " | 5,000.00 |

He admitted that the last six entries were all made in 1942.

4. The court below found in part, as follows:—
 "9. The gift from Mr. Goldsmith to Mrs. Goldsmith of $150,000 of bonds * * * was a 'gift' in name only; Mr. Goldsmith factually exercised control over those bonds and all 'indebtedness' of the F. & H. G. Corporation to him and/or his wife and actually determined how the bonds and indebtedness were disposed of."
 "13. Mr. Goldsmith was the true grantor of his stock and all 'indebtedness' of the F. & H. G. Corporation to himself and/or his wife." This means the taxpayer as grantor to the trustee of the trust.

stantiates the findings of the court below that the taxpayer did not make a genuine gift of the bonds to his wife and that the taxpayer was the true grantor of the bonds to the trust.

The second question is whether the taxpayer should be deemed to have constructively received in the year 1945, an interest credit from the trust in the amount of $1,109.13. In accordance with paragraph III of the trust instrument, an interest adjustment had to be made by the taxpayer, as trustee, between the accounts of the former bondholders of the F. & H. G. Corporation.

█ Under formula described in paragraph III of the trust, the account of Rosetta C. Goldsmith, as bondholder under paragraph III, received a credit of interest in the amount of $1,109.13. Who actually received payment of that amount does not appear. Having affirmed the trial court's finding that the taxpayer was the true grantor of the bonds to the trust, it follows that it was he who in fact should have received the credit. Under the holding of this court in Bair v. Commissioner of Internal Revenue, 2 Cir., 1952, 199 F.2d 589, this amount was properly considered as taxable income to the taxpayer for the year 1945, even if not actually paid.

The final question is whether the taxpayer was entitled to deduct from his 1945 income tax return, an interest payment allegedly made to his wife in the amount of $2,892.04. The court below held that he could not.[5]

Taxpayer testified that at the end of 1945, he was indebted to his wife in the amount of $63,200.60. This amount was arrived at by adding $3,700.60 to $59,500.00. The $59,500 represents the amounts received by the taxpayer from the Goldsmith Trust for the years 1939,

1940, 1941 and 1942, and alleged to have been, in effect, advances made to him by his wife under the 1923 oral agreement. The ledger account (Ex. 4) of the taxpayer shows that at the beginning of the year 1940 and 1941 there was a balance of principal due to his wife in the sum of $3,700.60. When asked upon cross-examination, how the interest figure of $2,892.04 was computed, the taxpayer, referring to his checkbook, stated that he thereafter repaid $15,000 of that amount to his wife, leaving a balance of $48,200.60, and that 6% of that figure totals $2,892.04.

█ In view of the lower court's finding that the taxpayer was the actual grantor of the bonds, it followed that the taxpayer, and not his wife, was entitled to the trust income for the years 1939 through 1942, which totaled $59,500. Interest allegedly paid on such amount did not constitute interest paid on a bona fide obligation of the taxpayer so as to come within the provision of Section 23(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(b).

The taxpayer contends that the alleged indebtedness of $3,700.60 resulted from a long course of dealings between himself and his wife from 1923 to 1942, having no connection whatsoever with the trust agreement. On page 15 of the taxpayer's brief, his attorney states: "At least to that extent there was an obligation from appellant to his wife that cannot be challenged, on which he was entitled to deduct interest of $222.04." Assuming the $3,700.60 to be a valid debt owing by the taxpayer to his wife, the debt would have been paid off when the taxpayer, according to his testimony, made the alleged "repayment" of $15,000 to his wife sometime after the year 1942. The trial judge found that the taxpayer did not satisfy the requirements of Section

5. The judge found:—"There was no bona fide obligation on the part of Mr. Goldsmith to pay as 'interest' the sum of $2,-892.04 to his wife in 1945." And concluded that:—"Mr. Goldsmith did not make a bona fide interest payment in 1945 of $2,892.04 to his wife and cannot satisfy the requirements of Section 23(b) of the Internal Revenue Code of 1939."

23(b) of the 1939 Revenue Code, as to the genuineness of the debt.

That disposes of the questions raised on this appeal. Accordingly, the judgment is affirmed.